UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **13-20283-CR-UNGARO/TORRES**

18 U.S.C. § 1347
42 U.S.C. § 1320a-7b(b)(2)(B)
18 U.S.C. § 2
18 U.S.C. § 982

Sealed

UNITED STATES OF AMERICA

v.

ALBERTO COSME GARCIA,

Defendant.
_____/

FILED by _____ D.C.
APR 3 0 2013
STEVEN M. LARIMORE
CLERK U.S. DIST. CT
S.D. of FLA. -- MIAMI

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.  Medicare programs covering different types of benefits were separated into different program "parts." "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound. Payments for home health care medical services were typically made directly to a Medicare-certified HHA or provider based on claims submitted to the Medicare program for qualifying services that had been provided to eligible beneficiaries.

4.  CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs. CMS contracted with different private companies to administer the Medicare Part A program throughout different parts of the United States. In the State of Florida, CMS contracted with Palmetto Government Benefits Administrators ("Palmetto"). As administrator, Palmetto was to receive, adjudicate and pay claims submitted by HHA providers under the Part A program for home health claims. Additionally, CMS separately contracted with companies in order to review HHA providers' claims data. CMS first contracted with TriCenturion, a Program Safeguard Contractor. Subsequently, on December 15, 2008, CMS contracted with SafeGuard Services, a Zone Program Integrity Contractor. Both TriCenturion and SafeGuard Services safeguarded the Medicare Trust Fund by reviewing HHA providers' claims for potential fraud, waste, and/or abuse.

### Part A Coverage and Regulations

#### Reimbursements

5.  The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home

2

health benefits. A patient qualified for home health benefits only if the patient:

 (a) was confined to the home, also referred to as homebound;

 (b) was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care ("POC"); and

 (c) the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing, physical therapy, speech therapy, or a continued need for occupational therapy; the beneficiary was confined to the home; that a POC for furnishing services was established and periodically reviewed; and that the services were furnished while the beneficiary was under the care of the physician who established the POC.

### Record Keeping Requirements

 6. Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting the actual treatment of the patients to whom services were provided and for whom claims for reimbursement were submitted by the HHA. These medical records were required to be sufficiently complete to permit Medicare, through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

 7. Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare was a (i) POC that included the physician order, diagnoses, types of services/frequency of visits, prognosis/rehabilitation potential, functional limitations/activities permitted, medications/treatments/nutritional requirements, safety measures/discharge plans, goals, and the physician's signature; and (ii) a signed certification

statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services.

8. Additionally, Medicare Part A regulations required HHAs to maintain medical records of every visit made by a nurse, therapist, or home health aide to a patient. The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any teaching and the understanding of the patient, and any changes in the patient's physical or emotional condition. The home health aide was required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury. These written medical records were generally created and maintained in the form of "skilled nursing progress notes" and "home health aide notes/observations."

## The Defendant and Related Entities

9. "P.H.H.C.L." was incorporated on or about May 14, 2008, and did business in Miami-Dade County, purportedly providing skilled nursing services, physical therapy, occupational therapy, and home health aide services to Medicare beneficiaries that purportedly required home health services. In or around January 2010, "P.H.H.C.L." began providing services to Medicare beneficiaries. In or around March 2010, "P.H.H.C.L." became a Medicare-certified HHA and submitted claims directly to Medicare under Medicare Provider Number 10-9457.

10. Defendant **ALBERTO COSME GARCIA** was a resident of Miami-Dade County.

## COUNT 1
## Health Care Fraud
## (18 U.S.C. § 1347)

1.  Paragraphs 1 through 10 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.  From in or around September 2011, and continuing through in or around December 2011, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ALBERTO COSME GARCIA,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare, that is, the defendant, through "P.H.H.C.L.," submitted and caused the submission of false and fraudulent claims to Medicare, seeking reimbursement for the cost of various home health services.

### Purpose of the Scheme and Artifice

3.  It was a purpose of the scheme and artifice for the defendant to unlawfully enrich himself and his accomplices by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare; and (c) diverting fraud proceeds for the personal use and benefit of himself and others.

### The Scheme and Artifice

4.  **ALBERTO COSME GARCIA** and his accomplices met with a doctor and his assistant to discuss the submission of false and fraudulent claims to Medicare, and paid the same

doctor and assistant for prescriptions that could be used for the submission of false and fraudulent claims to Medicare.

5. **ALBERTO COSME GARCIA** and his accomplices caused "P.H.H.C.L." to submit claims to Medicare that falsely and fraudulently represented that home health services and other health care benefits, items, and services were medically necessary and had been properly prescribed by a doctor.

6. As a result of the submission of these false and fraudulent claims, Medicare made payments to "P.H.H.C.L."

### Acts in Execution or Attempted Execution of the Scheme and Artifice

7. On or about the date set forth as to the count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant, **ALBERTO COSME GARCIA**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that the defendant submitted and caused the submission of false and fraudulent Medicare claims, representing that "P.H.H.C.L." had provided various home health services to beneficiaries pursuant to proper physicians' prescriptions and plans of care:

| Count | Approx. Date of Submission of Claim | Medicare Beneficiary | Medicare Claim Number | Service Claimed; Approx. Amount Paid |
|---|---|---|---|---|
| 1 | 12/21/2011 | L.R. | 21135503293205 | Physical Therapy, Skilled Nursing; $5,274 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS 2-3
### Payment of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(2)(B))

1. Paragraphs 1 through 10 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. On or about the dates enumerated below as to each count, in Miami-Dade County, in the Southern District of Florida, the defendant,

**ALBERTO COSME GARCIA,**

did knowingly and willfully offer and pay any remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, service, and item for which payment may be made in whole and in part under a federal health care program, that is, Medicare, as set forth below:

| Count | Approximate Date | Approximate Kickback Amount |
|---|---|---|
| 2 | 09/27/2011 | $440 |
| 3 | 09/29/2011 | $100 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B).

7

## FORFEITURE
## (18 U.S.C. § 982)

1.  The allegations contained in this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ALBERTO COSME GARCIA**, has an interest.

2.  Upon conviction of any of the violations alleged in Counts 1 through 3 of this Indictment, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation, pursuant to Title 18, United States Code, Section 982(a)(7).

All pursuant to Title 18, United States Code, Section 982(a)(7); and the procedures set forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____
FOREPERSON

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
JOHN P. GONSOULIN
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

v.

ALBERTO COSME GARCIA,

         **Defendant.**
_____/

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division**: (Select One)

_X_ Miami    ___ Key West
___ FTL      ___ WPB    ___ FTP

New Defendant(s)    Yes ___   No ___
Number of New Defendants ___
Total number of counts ___

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)    _Yes_
   List language and/or dialect    _Spanish_

4. This case will take   _3-5_   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)

   | | | | (Check only one) | |
   |---|---|---|---|---|
   | I | 0 to 5 days | _X_ | Petty | ___ |
   | II | 6 to 10 days | ___ | Minor | ___ |
   | III | 11 to 20 days | ___ | Misdem. | ___ |
   | IV | 21 to 60 days | ___ | Felony | _X_ |
   | V | 61 days and over | ___ | | |

6. Has this case been previously filed in this District Court? (Yes or No)   _No_
   If yes:
   Judge: _____    Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No) ___
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No)   _No_

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ___ Yes _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? ___ Yes _X_ No

 

                                               _____
                                               JOHN P. GONSOULIN
                                               ASSISTANT UNITED STATES ATTORNEY
                                               Court ID No. A5501289

*Penalty Sheet(s) attached                                                                             REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** ALBERTO COSME GARCIA

**Case No:** _____

Count #: 1

Health Care Fraud

Title 18, United States Code, Section 1347

\* **Max. Penalty**: Ten (10) years' imprisonment

Counts #: 2-3

Payment of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320a-7b(b)(2)(B)

\***Max. Penalty:** Five (5) years' imprisonment as to each count

\***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**